**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

AMERICA'S HOME PLACE,                  :
INC.,                                                      :
                                                             :
          Plaintiff,                                   :
                                                             :          CIVIL ACTION NO.
          v.                                              :          2:15-CV-00197-RWS
                                                             :
FINE BUILT CONSTRUCTION      :
OF NORTH CAROLINA, INC., et     :
al.,                                                        :
                                                             :
          Defendants.                              :

## <u>ORDER</u>

This case comes before the Court on the Neisler Defendants' Motion for

Summary Judgment [71]; Plaintiff's Motion for Summary Judgment [73]; and

Defendants Fine Built Construction and Clifford T. Fine's Motions for

Summary Judgment as to Plaintiff's Complaint [83] and the Neisler

Defendants' Counterclaims [82].

Also before the Court is a Motion to Exclude the Declaration of Larry

Vandiver [90], which was filed in support of Plaintiff's Motion for Summary

Judgment.  As the Court indicated during oral argument on November 13,

2017, that Motion will be **GRANTED in part** and **DENIED in part**.  It is

granted as to Plaintiff's attempt to introduce an additional floor plan–the Oxford Plan–that was not produced until after the close of discovery. See FED. R. CIV. P. 37(c). The Motion is denied, however, insofar as it seeks to prevent Plaintiff's introduction of the complete copyright registrations for the Mountainview plans, upon which this suit is, and has always been, premised.

As to the other pending Motions, after reviewing the record and considering the parties' arguments in the briefs and during oral argument, the Court enters the following Order.

## Background

This is a copyright case involving residential building designs. Plaintiff America's Home Place, Inc. is a "scattered-lot" custom home builder. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF"), Dkt. [73-2] ¶ 1.)[1] Plaintiff owns certificates of registration from the United States Copyright

---

[1] The Court notes that many of the objections made by the Neislers and Fine Defendants in response to Plaintiff's Statement of Undisputed Material Facts [73-2] stem from their dissent over the use of the Declaration of Larry Vandiver [74] because Mr. Vandiver was not identified as a witness during discovery. As indicated above, the Court will only disregard the statements and exhibits of the Vandiver Declaration that pertain to the Oxford home design. Otherwise, the Court will allow Plaintiffs to rely upon the Vandiver Declaration. Facts derived therefrom will be deemed admitted absent an alternative basis for objecting from Defendants.

2

Office for two residential construction plans called the Mountainview I and Mountainview II.[2]  (Id. ¶¶ 2–6; Vandiver Decl., Dkt. [74] at Ex. A, Ex. B.)

In 2014, Kim and Terry Neisler–two first responders from Florida–approached Plaintiff and several other local builders about building a home for them in Blairsville, Georgia.  (Decl. of Terence Neisler ("Neisler Decl."), Dkt. [71-4] ¶¶ 3, 8–9.)  When the Neislers met with Plaintiff, some time in October 2014, they had already created a conceptual layout for their future home.  (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("Pl.'s Resp. to Fine SOF"), Dkt. [96] ¶ 105.)  While in discussions with Plaintiff, the Neislers were shown portions of the Mountainview I-B and II-B plans, which are modified versions of the original Mountainview designs.  (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ("Fines' Resp. to Pl. SOF"), Dkt. [97-1] ¶ 33–34.)  The Moutainview I-B and II-B were redlined to reflect modifications requested by the Neislers.  (Id.)

Ultimately, however, the Neislers never contracted with Plaintiff.

---

[2]  The registration numbers for the Mountainview I and Mountainview II are VAu000610338 and VAu000610339, respectively.

AO 72A
(Rev.8/82)

Instead, the Neislers retained Fine Built Construction ("Fine Built")[3] to build their home. (Pl.'s Resp. to Fine SOF, Dkt. [96] ¶¶ 104, 106.) Fine Built then hired Diane Wilson to draft plans for the Neislers' home, and the Fine Defendants constructed a home based on those plans. (Id. ¶¶ 115–16; Fines' Resp. to Pl. SOF, Dkt. [97-1] ¶ 41.) After Plaintiff noticed similarities between its Mountainview plans and the home the Neislers had built, this litigation ensued. Plaintiff brings this copyright action alleging that the Neislers' home impermissibly infringes upon the Mountainview I-B and Mountainview II-B designs, as well as the redlined versions of those plans. Plaintiff now moves for summary judgment, as do Defendants.

## Discussion

### I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for

---

[3] Defendant Clifford T. Fine is the president of Fine Built. (Pl.'s Resp to Fine SOF, Dkt. [96] ¶ 15.) The two, collectively, will be referred to as the "Fine Defendants."

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

Furthermore, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those

5

inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Id. And while "[c]ross-motions for summary judgment will not, in themselves, warrant

6

the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed," cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. United States v. Oakley, 744 F.2d 1553, 1555–56 (11th Cir. 1984).

## II.     Cross Motions for Summary Judgment [71], [73], [83]

To support a claim of copyright infringement, Plaintiff must prove (1) ownership of a valid copyright and (2) copying of protectable elements by Defendants. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1325 (11th Cir. 2012) (quoting Oravec v. Sunny Isles Luxury Ventures, LLC, 527 F.3d 1218, 1223 (11th Cir. 2008)).

### A.     Ownership of a Valid Copyright

The first element–ownership of a copyright–may be demonstrated through registration with the United States Copyright Office. Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc., 785 F.2d 897, 903 (11th Cir. 1986). Here, Plaintiff has produced certificates of registration for two residential construction plans: Mountainview I (registration number

7

VAu000610338) and Mountainview II (registration number VAu000610339).

Defendants do not challenge Plaintiff's ownership of these copyrights or their

validity.[4]

Defendants do argue, however, that the redlined Mountainview plans

cannot form a basis for Plaintiff's copyright infringement action because they

are unregistered works. Plaintiff responds that the redlined plans are derivative

works of the Mountainview plans, so registration of the latter is sufficient to

permit a claim for infringement of the former.

Registration with the Copyright Office is a precondition for bringing an

action for copyright infringement. Reed Elsevier, Inc. v. Muchnick, 559 U.S.

154, 157 (2010); Fourth Estate Pub. Benefit Corp. v. Wall–Street.com, LLC,

856 F.3d 1338, 1339 (11th Cir. 2017); see 17 U.S.C. § 411(a) ("[N]o civil

action for infringement of the copyright in any United States work shall be

---

[4] The Fine Defendants challenge whether these registrations actually apply to
the plans at issue, however, "because neither of the certificates include a copy of the
deposit/plans submitted with the registration." (Fine Defs.' Reply in Further Supp. of
Their Mot. for Summ. J. as to Pl.'s Compl., Dkt. [102] at 7.) On summary judgment,
the Court must construe the facts in the light most favorable to the nonmoving
party–in the case of this argument, Plaintiff–meaning that the Court will accept as true
Plaintiff's allegation that the floor plans produced are derivative works of these
registered plans. However, as discussed more fully below, this presents another issue
with Plaintiff's claim.

AO 72A
(Rev.8/82)

instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). As a general rule, this registration requirement also applies to derivative works. Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc., 264 F.3d 622, 632 (6th Cir. 2000) ("[B]efore an infringement suit can be sustained based on the derivative work, that derivative work must be registered."), abrogated in part by Reed, 559 U.S. at 157 (The "registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."). Otherwise, the owner of a copyright in a registered underlying work may sue for infringement of portions of an unregistered derivative work, only where the underlying work is infringed by virtue of the defendant's copying of the derivative work. Montgomery v. Noga, 168 F.3d 1282, 1292–93 (11th Cir. 1999); see also Willis v. Knight, No. 1:08-CV-705-ODE, 2008 WL 11336133, at *4 (N.D. Ga. Oct. 20, 2008). In other words, "an unregistered derivative work is protected from infringement only to the extent to which that unregistered work has reproduced protected material from the underlying registered work." Pearson Educ., Inc. v. Ishayev, 963 F. Supp. 2d 239, 248 (S.D.N.Y. 2013) (citing cases supporting this "majority approach," including Montgomery, 168 F.3d at 1292 ("The exclusive

right to prepare derivative works, specified separately in clause (2) of section 106, overlaps the exclusive right of reproduction [in section 106(1) ] to some extent. . . . [T]o constitute a violation of section 106(2), the infringing work must incorporate a *portion of* the copyrighted work in some form.")).

Here, then, the redlined plans are only protected insofar as the Mountainview plans are. Any alterations in the redlined plans need not be considered and do not affect the Court's analysis. But more significantly, these legal principles illuminate a different, glaring issue with Plaintiff's case. Namely, Plaintiff has only produced copyright registrations for the Mountainview I and Mountainview II plans, but has alleged infringement of the Mountainview I-B and Mountainview II-B plans, which Plaintiff admits are derivative works of the registered plans. (See Pl.'s SOF, Dkt. [73-2] ¶¶ 2–8.)

However, as stated above, a derivative work must be registered separately from the underlying work prior to filing a copyright suit based on the derivative; if not, the unregistered derivative work is protected only to the extent it includes protected elements of the underlying design. Montgomery, 168 F.3d at 1292 (concluding the court had jurisdiction over an infringement action based on an unregistered derivative, where the derivative incorporated

10

significant protectable elements of a registered original work, such that by copying the unregistered derivative, the defendants infringed original elements of the underlying registered work); see also Dalton Ross Homes, Inc. v. Williams, No. CV-06-1301-PCT-FJM, 2007 WL 2461892, at *3 (D. Ariz. Aug. 29, 2007) (granting summary judgment in favor of defendants who had admittedly copied an unregistered derivative work of a registered floor plan because "a plain reading of section 501(b) in conjunction with section 411(a) [which makes no distinction between a derivative and original work], indicate[s] that in order to file an action for infringement of a derivative work, the plaintiff must first register the copyright of that derivative work").

Plaintiff has neither produced a copyright registration for the derivative plans, nor explained how the derivative plans incorporated original, protectable elements of the underlying, registered works. Rather, Plaintiff, in its briefing, argues merely that its registrations are valid and "'that a valid copyright can exist in a derivative work' based upon preexisting works." (Pl.'s Reply to all Defs. Resp. to Pl.'s Mot. for Summ. J., Dkt. [103] at 2–6, 8 (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821 (11th Cir. 1982).). Certainly, this is true, but it misses the point. Plaintiff's registrations only

11

make clear that the Mountainview I and Mountainview II plans are copyrighted; they do not satisfy the statutory requirement of registration as to the Mountainview I-B and Mountainview II-B.  See, e.g., Murray Hill Publ'ns, 264 F.3d at 630 (holding that the copyright owner must formally register a derivative work in order to file an infringement suit for infringement of that derivative work).  Therefore, Plaintiff may only sue for infringement of the Mountainview I-B and Mountainview II-B based on its registration of the underlying Mountainview plans if "the author of both works is the same *and the underlying work is infringed by virtue of the defendant's copying of the derivative work*."  Willis, 2008 WL 11336133, at * 4 (citing Montgomery, 168 F.3d at 1292–93) (emphasis added).

The Eleventh Circuit articulated this limitation in Montgomery v. Noga. There, the author of a computer program enabling users to view pictures on a computer screen integrated several computer programs to create the initial version of a program called VPIC.  Montgomery, 168 F.3d at 1286.  The author registered his copyright in VPIC version 2.9a, but the case stemmed from the defendants' unlicensed download and use of VPIC version 4.3.  Id. at 1286–87. There was no copyright registration for version 4.3, which was derived from

12

2.9a.  Id. at 1287, 1291–92. Nevertheless, the Eleventh Circuit affirmed the

district court's act of allowing the author to prove infringement of the

unregistered version 4.3 by showing that the defendants violated the copyright

of version 2.9a:

> The evidence at trial showed that VPIC 4.3 incorporated over
> seventy percent of the original source code from the registered
> work VPIC 2.9a, and that VPIC 4.3 would not function if the
> VPIC 2.9a code was removed.  By downloading VPIC 4.3 and
> incorporating it as a utility on FLD discs, therefore, the defendants
> infringed Montgomery's registered copyright *in VPIC 2.9a* within
> the meaning of section 501(a) of the Copyright Act.

Id.  at 1292–93.

Such is not the case here.  In Montgomery, the author's claim for

infringement was based on the inevitability that by use of the unregistered

VPIC 4.3, the defendants necessarily infringed upon the registered VPIC 2.9a

by virtue of the fact that the derivative version incorporated a significant

portion of the protected one, without which VPIC 4.3 could not even function.

By contrast, Plaintiff has presented no evidence to suggest that Mountainview

I-B and Mountainview II-B incorporate any meaningful share of the protected

plans, such that any copying of the derivative works by Defendants inevitably

means infringement of the registered designs.

13

AO 72A
(Rev.8/82)

It is Plaintiff's burden to prove, not just its ownership of a valid copyright, but also copying of protectable elements by Defendants.  See, e.g., Miller's Ale House, 702 F.3d at 1325.  In the case of the unregistered Mountainview I-B and Mountainview II-B plans, the only possible protectable elements are those also present in the Mountainview I and Mountainview II plans.  As Plaintiff has not produced the original Mountainview designs, it is impossible to discern what in the derivative plans might be protected and what, as a matter of law, cannot be.  As a result, Plaintiff has failed to carry its burden.  And this, alone, is sufficient to warrant summary judgment in favor of Defendants.  Nonetheless, because the Parties have spent significant time arguing the issue of substantial similarity, the Court will turn briefly to the second element of Plaintiff's copyright claim–copying–recognizing that it will not change the outcome of this Order.

B.    Copying

"Copying" may be shown by establishing a defendant's access to the copyrighted work and that the defendant's work is substantially similar to the

AO 72A
(Rev.8/82)

plaintiff's work.[5]  <u>Donald Frederick Evans & Associates, Inc. v. Continental</u>

<u>Homes, Inc.</u>, 785 F.2d 897, 903-04 (11th Cir. 1986).  Because it is not

contested that Defendants had access to the Mountainview plans, the Court will

focus on whether the Neislers' home is substantially similar to those designs.

In an action involving architectural works, the test for substantial

similarity is "whether a reasonable jury could find the competing designs

substantially similar at the level of protected expression."  <u>Miller's Ale House</u>,

702 F.3d at 1325.  The protection afforded compilations such as floor plans,

however, is "thin."  <u>Id.</u>  That is because "the variety of ways a two-story

rectangle can be divided into three bedrooms, two baths, a kitchen, a great

room or living room, closets, porches, etc. is finite."  <u>Howard v. Sterchi</u>, 974

F.2d 1272, 1275 (11th Cir. 1992).  And so "the substantial similarity analysis

---

[5]  This is the test where proof of direct copying is unavailable.  <u>Herzog v.
Castle Rock Entm't</u>, 193 F.3d 1241, 1249 (11th Cir. 1999) ("Since it is virtually
impossible to prove copying directly, this element is usually established
circumstantially, by demonstrating that the person who composed the defendant's
work had access to the copyrighted material and that there is substantial similarity
between the works.").  Here, Defendants deny copying.  And even if there were
evidence that the Neislers attempted to copy the Mountainview plans, "there is no
infringement unless the defendant succeeded to a meaningful degree."  <u>Leigh v.
Warner Bros.</u>, 212 F.3d 1210, 1214 (11th Cir. 2000).  Therefore the Court would still
need to perform the same substantial similarity analysis.

must focus [only] on similarity of expression, *i.e.*, material susceptible of copyright protection." <u>Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.</u>, 554 F.3d 914, 921 (11th Cir. 2008). "[S]pacial depictions of rooms, doors, windows, walls, etc." are not protected. <u>Intervest</u>, 554 F.3d at 920. Only "an architect's original combination or arrangement of such elements may be." <u>Id.</u> at 919; <u>see also</u> <u>Home Design Servs.</u>, 825 F.3d 1314 at 1321 (explaining that the Copyright Act restricts the definition of copyrightable architectural work to exclude "individual standard features"–*e.g.*, "common windows, doors, and other staple building components." (citing 17 U.S.C. § 101 and its legislative history)). Moreover, given the subtle distinction between protected and unprotected expression, according to the Eleventh Circuit, judges, rather than juries, are usually better equipped to resolve questions of infringement. <u>See</u> <u>Intervest</u>, 554 F.3d at 920 (The issue of "substantial similarity at the level of protectable expression . . . is often more reliably and accurately resolved in a summary judgment proceeding . . . because a judge is better able to separate original expression from the non-original elements of a work . . . ."). It is the Court's task, then, to "separate protectable expression from non-protectable expression" and determine whether the protectable elements of the works are

16

"substantially similar," recognizing that with architectural designs, "modest dissimilarities are more significant than they may be in other types of art works." Miller's Ale House, 702 F.3d at 1326; Intervest, 554 F.3d at 918.

To illustrate, take Intervest, where the Eleventh Circuit examined a set of architectural house plans and found that, although the plans shared the same overall layout, no reasonable jury could deem them substantially similar at the level of protected expression due to numerous, subtle differences in the plans' otherwise standard architectural features. Id. 921. Common elements among the two floor plans included four bedrooms, a two-car garage, living room, dining room, family room, foyer, kitchen, two bathrooms, a nook, and a porch. Id. at 916. But the plans contained significant differences as well, such as different room dimensions, different garage entrance locations, the inclusion of a "bonus room" above the garage in one model but not the other, different locations of the air conditioning unit and water heater, the inclusion of windows in the garage in one model but not the other, and several differences between the various bedrooms across the two models. Id. at 916–17 (quoting the district court's order granting summary judgment in favor of defendant and recognizing these differences as significant). The court, therefore, concluded

17

that no reasonable jury could find the two floor plans at issue "substantially similar." Id. at 921.

Likewise, in Home Design Services, the court found no infringement despite the plans sharing the same set of rooms, arranged in the same overall layout, the same presence, location, and function of walls, entryways, windows, and fixtures:

> Although HDS-2089 and the Turner plans share the same general layout, this is only because both sets of plans follow the customary four-three split style, as well as the attendant industry standards. Kevin Alter, Home Design's own expert, conceded on cross-examination that HDS-2089's split-bedroom arrangement aligns with industry standards, as does the contiguity of the dining room, breakfast nook, and kitchen. Alter further characterized HDS-2089 as neither "unusual" nor "radically different [from] the many things that are on the market." No one, including Home Design, owns a copyright to the idea of a four-three split style, nor to the industry standards that architects regularly heed to achieve such a split.

825 F.3d at 1324–25.

So too here, the problem for Plaintiff is that the Mountainview designs seem to merely follow the customary style for split-level homes with open floor plans, as well as the attendant industry standards. (See generally Ex. 2, Neislers' Mot. for Summ. J. ("Wilson Dep. Excepts"), Dkt. [71-5] at 9–40.)

18

Plaintiffs have produced no testimony or other evidence to the contrary. And "when floor plans are drawn in a customary style and to industry standards, even 'subtle differences' . . . can indicate that there is no copyright infringement." Home Design Servs., 825 F.3d at1324. 1324 (citing Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 102 n.12, 106–07 (2d Cir. 2014)).

The differences here, though, are not so subtle. Indeed, while the Neislers' home and Mountainview plans are visually similar in some respects, there are a number of significant dissimilarities comparable to those identified in Intervest and Home Design Services. In fact, Defendants allege more than one hundred dissimilarities, the existence of which Plaintiff does not dispute. Instead, Plaintiff contends that they are merely "differences among non-protectable elements [that] should have no bearing on the Court's analysis of substantial similarity." (Pl.'s Resp. in Opp'n to All Defs.' Mots. for Summ. J. as to Pl.'s Claims, Dkt. [95] at 11 (citing Intervest, 554 F.3d at 921).) According to Plaintiff, the Court should compare the plans at a broader level, which will reveal "substantial similarity among the" unique arrangement and coordination of elements that "significantly overshadows any minute differences that may exist among individual standard elements[.]" (Id. at 12.)

19

However, it is both the individual design elements and the unique compilation of those elements that are relevant to the copyright infringement analysis. <u>Jeff Benton Homes v. Alabama Heritage Homes, Inc.</u>, 929 F. Supp. 2d 1231, 1241 (N.D. Ala. 2013).

Comparing the Mountainview plans and the Neislers' home side by side, there are several striking dissimilarities. Looking just at the exterior, it is clear that the Neislers' home has a higher elevation and includes an entire floor–the basement–that is absent from the Mountainview plans. Furthermore, the porch on the Neislers' home spans the length of the building's posterior; the Mountainview porches do not. And while both designs include a similar roofline, the Mountainview gable descends at a steeper slope, and the gables' central windows differ, as do the size and shape of the windows on the left and right sides of the main floors. The position of the chimney and vents are different as well.

Numerous dissimilarities are also evident when examining the plans' interior designs, dozens of which are present in the main floor alone. These include different windows and different window locations, a fireplace, different sized rooms, a larger, distinctly-shaped island in the Neislers' kitchen, and a

staircase to the basement, which of course leads to an entire floor absent from the Mountainview plans. Additionally, the upstairs of the Nieslers' home has larger closets, a single closet in the master bedroom–as opposed to two separate ones, a linen closet in the master bathroom, french doors in one of the bedrooms, different sized windows, and different room dimensions, just to name a few. Not only were many of these dissimilarities highlighted by the Eleventh Circuit in <u>Intervest</u> and <u>Heritage Homes</u>, but the volume of dissimilarities between the Neislers' home and Mountainview plans and their magnitude are at least comparable to the ones present in those cases, if not greater.

Thus, Plaintiff has failed to demonstrate that the Neislers' home and Mountainview plans are substantially similar under the applicable law. Defendants' Motions for Summary Judgment [71], [83] are, therefore, **GRANTED**, and Plaintiff's Motion for Summary Judgment [73] is **DENIED**.

## II. Fine Defendants' Motion for Summary Judgment as to the Neisler Defendants' Counterclaims [82]

The Fine Defendants move for summary judgment as to the Neislers' two remaining counterclaims: (1) breach of implied warranty and (2) violation of

the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA").[6] The

Neislers' breach of implied warranty claim seeks contribution and/or

indemnification in the event of a finding of liability on any of Plaintiff's

claims. Because summary judgment will be granted in favor of Defendants,

this counterclaim is moot and will be dismissed. In addition, the Neislers have

agreed to voluntarily dismiss their GUDTPA claim, (see Mem. of Law in Opp.

to Fine Defs.' Mot. for Summary J., Dkt. [92] at 5), so it will likewise be

dismissed. The Fine Defendants' Motion for Summary Judgement as to the

Neisler Defendants' Counterclaims is, thus, **GRANTED in part** and **DENIED**

**in part**. All remaining counterclaims against the Fine Defendants are hereby

**DISMISSED**.

### Conclusion

For the foregoing reasons, the Motion to Exclude the Declaration of

Larry Vandiver [90], is **GRANTED in part** and **DENIED in part**.

The Neislers' Motion for Summary Judgment [71] and the Fine

---

[6] The Neislers initially brought four counterclaims against the Fine Defendants in response to two cross-claims filed by the Fine Defendants. However, after the Court dismissed the Fine Defendants cross-claims (see Dkt. [48]), the Neislers voluntarily dismissed two of their counterclaims with permission from the Court (see Dkt. [65]). Only the Neislers' implied warranty and GUDTPA claims remain.

AO 72A
(Rev.8/82)

Defendants' Motion for Summary Judgment as to Plaintiff's Claims [83] are

**GRANTED**.  Plaintiff's Motion for Summary Judgment [73] is hereby

**DENIED**.

The Fine Defendants' Motion for Summary Judgment as to the Neislers'

Counterclaims [82] is **GRANTED in part** and **DENIED in part**.  It is granted

as to the Neislers' GUDTPA claim, which the parties have agreed to dismiss.  It

is denied as moot as to the Neislers' breach of implied warranty claim.  The

remaining counterclaims against the Fine Defendants–(Count II and Count IV,

Defs.' Terry and Kim Neisler's Answer, Affirmative Defenses and Countercl.

to Co-Defs.' Cross-cl., Dkt. [20])–are, therefore, **DISMISSED**.

As there are no claims remaining in this action, the Clerk is **DIRECTED**

to close the case.

**SO ORDERED**, this 29th day of January, 2018.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)